In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3658

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ERNEST MYERS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CR 174—**Milton I. Shadur**, *Judge.*

ARGUED MARCH 31, 2009—DECIDED JULY 1, 2009

Before FLAUM, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* Ernest Myers (a.k.a. "Tank") was convicted of attempted arson under 18 U.S.C. § 844(i) after his business burned down. He appeals, claiming the government's closing statement deprived him of his right to a fair trial and his Confrontation Clause rights. Myers also asserts that he is entitled to a limited remand for resentencing. He was acquitted on five of the six counts

related to the arson. Myers objects to the district court's consideration of the acquitted charges as relevant conduct at sentencing. We affirm.

## I.

Ernest Myers rented a warehouse in the City of Joliet ("the City") to establish a for-profit recreation center for teenagers, where the youth could shoot pool, play video games, dance, and enjoy comedy shows. He dubbed the business "Against All Odds." Unfortunately, the odds were against Myers. Shortly after opening the center in late 2000, Myers had to apply to the City for permits to run pool tables, video games, and dances. The City granted him a permit for video games, but denied him permits for pool tables and dances. Myers was forced to return the lucrative pool tables he had rented. The City then demanded that Myers pave the parking lot, erect a screen between his and the adjoining lots, install a sidewalk, and conform to landscape and setback ordinances. Myers was also forced to make the bathrooms handicapped-accessible and to install fire extinguishers and emergency exits. Squeezed at one end by the denial of revenue-producing pool tables and dances and at the other end by the required improvements, Against All Odds closed on April 26, 2001.

Having lost all his investment, and having received a notice to quit the premises because of his failure to pay over $7,000 in overdue rent, according to the government Myers turned to arson. He had taken out $500,000 in property damage insurance on the property, which was owned by Ronald Schumacker. Myers's nephew Rodney

Bew testified that Myers approached him and asked if he could find someone to burn down the building because "he was not going to let the City beat him out of his investment." Bew also testified that a few days later Myers told him that he had opened a gas pipeline in the building hoping that it would blow up. Anthony Dunn stated that Myers asked him for advice in starting a fire. Dunn suggested blowing out the pilot light and placing a candle nearby, and he and Myers went to the warehouse and did so. However, the building failed to ignite. Will Pruitte testified that Myers asked him how to start a fire. Pruitte suggested loosening a gas line. According to Pruitte, on May 5, 2001, he and Myers traveled to Against All Odds, where Pruitte banged on a pipe but did not open the line. He testified that he saw Myers pouring gasoline on the floor and making a gasoline trail to the door.

Although a fire was not lit on May 5, flames engulfed the building on May 7. Pruitte testified that the next morning Myers said, "Fuck you guys. I had to do it myself." Myers and Schumacker filed insurance claims after the fire and collected approximately $35,000 and $197,000, respectively.

Meanwhile, fire investigators scrutinized the debris. A trained accelerant detection dog named Smitty sniffed the scene and alerted at one location. Smitty also showed interest in several other areas at the scene. When investigators tested samples from those areas, including carpet fibers from the floor, no accelerant was found.

Myers, Dunn, and Pruitte were indicted by a grand jury. Dunn and Pruitte then pleaded guilty and testified against Myers. In a separate case unrelated to the arson, Bew also

pleaded guilty on the condition that he testify against
Myers. Bew, Dunn, and Pruitte testified at trial as outlined
above. A fire investigator testified regarding Smitty's
reactions and the forensic findings, and concluded that the
fire was intentionally set because multiple fires had been
set in the building at different points. It was stipulated that
the only gasoline found on the site was in a plastic con-
tainer in a storage area. In his defense, Myers's wife
testified that he had been at home from 6:30 p.m. to
10:00 p.m. on the night the center burned. Myers's defense
attorney also attempted to cast suspicion on Anthony Hite,
who had invested money in Against All Odds and at-
tempted unsuccessfully to collect on the insurance policy.

During closing arguments, Myers's attorney highlighted
the fact that no forensic evidence supported the govern-
ment's contention that Myers had poured gasoline on the
floor of Against All Odds. In its rebuttal closing argument,
the government responded with the following argument:

> [Defense counsel] says, "Well, the arson people didn't
> find any gasoline when they went through." Another
> thing, you've got to remember something, too.
> Firefighters were there that day. They're pouring a lot
> of water into that building. It was water. They had
> hoses, they had to do a defensive attack. You heard
> about that. They had to break in the doors to fight the
> fire from the inside. So the fact you might—you didn't
> see evidence of gasoline apart from the burned gaso-
> line can that you did hear testimony about, any specu-
> lation on the part of [defense counsel] about why or
> why there wasn't gasoline can be easily explained by

the fact that there were firefighters that were in there that night trying to extinguish that fire with water. Water has a tendency to sweep through and remove all sorts of different things that might have been on the ground. So, ladies and gentlemen, that's an easy explainable different part of what [defense counsel] was trying to suggest.

Myers's attorney did not object to that argument. Although Myers had been charged with attempted arson, arson, use of fire to commit a felony, and use of mail and wire communications to commit insurance fraud, the jury acquitted him on all counts except the attempted arson charge which stemmed from the events that occurred on or before May 5, a felony under 18 U.S.C. § 844(i). Thus, Myers was acquitted on all counts related to the events of May 7, when Against All Odds burned and the fire department was brought in.

At sentencing, the district court calculated the guidelines range for the attempted arson count at 210 to 262 months. This range reflected the court's determination that Myers was a career offender, based on 20-year-old convictions for residential burglary and drug possession with intent to deliver. The district court considered Myers's acquitted conduct in calculating his sentence. Defense counsel argued that a lower sentence was warranted based on the 20-year lapse of time between Myers's present offense and his earlier convictions. The district court agreed and sentenced Myers to 180 months. Myers appeals.

II.

On appeal, Myers challenges the government's statements in its closing argument that water from the fire hoses could have washed away the gasoline that Myers allegedly dumped. He claims that, by making this argument for the first time in its rebuttal closing argument with no opportunity for him to respond, the government deprived him of his right to a fair trial. Myers also claims that his right under the Confrontation Clause was violated by the government's argument, because those comments constituted a "phantom expert witness" that Myers could not confront.

Because Myers's attorney did not object to the government's argument at trial, we review these claims for plain error. *United States v. Middlebrook*, 553 F.3d 572, 577 (7th Cir. 2009). Myers must show: "(1) that there was error, (2) that the error was plain (in the sense of obvious), (3) that the error affected his substantial rights, and (4) that, if the first three points are established, the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Zawada*, 552 F.3d 531, 535 (7th Cir. 2008).

When a criminal defendant claims that a prosecutor made improper remarks in his closing argument, we evaluate the claim under the rubric of prosecutorial misconduct to determine if a defendant has been deprived of his right to a fair trial. *United States v. Clark*, 535 F.3d 571, 580 (7th Cir. 2008); *United States v. Willis*, 523 F.3d 762, 771 (7th Cir. 2008). A defendant must show both that the remark was improper and that he was prejudiced. *Clark*, 535 F.3d at 580.

We first consider the propriety of the part of the government's closing argument where Myers criticizes the reference to the "phantom" expert. Under the Federal Rules of Evidence, "expert testimony is appropriate if 'specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Simonson v. Hepp*, 549 F.3d 1101, 1106 (7th Cir. 2008) (citing Fed. R. Evid. 702). This court explained that "[a]lthough these rules do not require expert testimony—they only say when it is permissible—they point to a basic truth of trial practice: expert testimony is often needed to eliminate speculation." *Id*. at 1106-07. Here, Myers argues that expert testimony was necessary to eliminate speculation by the jury regarding the absence of gasoline. On the one hand, it is surely within the understanding of the reasonable juror that water acts to clean surfaces such as carpets. Most persons in our society have enough experience with regular hygiene and common tools such as power-washers to be able to judge the cleansing effects of water. Had the government argued the mere possibility that water could have cleaned or diluted the surface of the carpet so that Smitty missed the scent of any accelerant, such an argument may have been permissible even without expert testimony.

On the other hand, the government did not couch its argument in such hypothetical terms. Rather, the government stated that the absence of gasoline was "easily explained" by the water from the fire hoses and that water "has a tendency" to "remove all sorts of different things" from the ground. In other words, the government may have crossed the line from *suggesting* that such a hypotheti-

cal event occurred to *vouching* for the fact that it did occur. To the extent that the government did cross the line, its argument was an invitation for the jury to speculate on the absence of evidence and was impermissible in the absence of expert testimony. Indeed, while a reasonable juror presumably has firsthand knowledge of what happens when water is splashed on a surface, that juror might not know how water affects a substance like gasoline, especially if the gasoline was poured two days earlier.

However, even supposing that the government's argument was improper, Myers has not shown that he has been prejudiced. "In determining prejudice, we consider the following factors: (1) whether the prosecutor misstated the evidence; (2) whether the remark implicated a specific right; (3) whether the defendant invited the remark; (4) whether the district court provided (and the efficacy of) a curative instruction; (5) whether the defendant had an opportunity to rebut the remark; and (6) the weight of the evidence against the defendant." *Clark*, 535 F.3d at 580-81. Regardless of whether "'the prosecutors' remarks were undesirable or even universally condemned[,] [t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *United States v. Washington*, 417 F.3d 780, 786 (7th Cir. 2005) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

The *Clark* factors show that Myers was not prejudiced here. First, the district court instructed the jury that the statements of the attorneys were not evidence. We have frequently stated that "jurors are presumed to follow

limiting and curative instructions unless the matter improperly before them is so powerfully incriminating that they cannot reasonably be expected to put it out of their minds." *United States v. Curry*, 538 F.3d 718, 728 (7th Cir. 2008). Here, the government's remark was not "so powerfully incriminating" that jurors would have been unable to set it aside, because the point was tangential to the thrust of the government's case. While this remark would have been better left unsaid, there was nothing scientific about noting that sprayed water sweeps through and removes things on the ground. Second, the weight of the evidence was against Myers for his conviction on the attempted arson charge. Three witnesses testified that Myers approached them about setting a fire. Dunn testified that he assisted Myers on one attempt to start a fire, and Pruitte testified that he helped Myers on a second failed attempt and that he saw Myers pouring gasoline on the floor. Police found gasoline in the warehouse, thereby connecting gasoline with the crime scene. Moreover, Myers had a motive to collect insurance money to offset his losses in the failed business. Thus, the weight of the evidence strongly supported the jury's guilty verdict on the attempt charge. Although Myers was acquitted on the charge of arson, the evidence related to that charge was not as strong as the evidence related to the attempt charge. Third, the defendant invited the remark by commenting upon the lack of gasoline in the samples tested by the government. Although Myers had no chance to respond to the government's argument concerning water's potential effect on the gasoline, on balance Myers was not prejudiced by the government's remark. Moreover, even assuming that there

was plain error that was prejudicial to Myers, we cannot conclude that the government's statement was a "particularly egregious error" that resulted in a "miscarriage of justice," or that the "fairness, integrity, or public reputation of judicial proceedings" have been seriously compromised. Therefore, under the plain error standard of review, Myers has not shown error requiring reversal.[1]

Myers also argues that his case should be remanded for resentencing in light of *Kimbrough v. United States*, 552 U.S. 85 (2007), which held that the crack cocaine sentencing guidelines are advisory and not mandatory. Myers argues that the crack cocaine guidelines were deemed advisory because they were based on policy choices of the Sentencing Commission, rather than empirical evidence. According to Myers, because the career offender guidelines were similarly based on policy choices, those guidelines are also advisory and the district court was free to depart from

---

[1] Myers also claims that his right under the Confrontation Clause was violated by the government's rebuttal closing argument. That is, Myers asserts that in its rebuttal closing argument the government implicitly referred to a "phantom expert witness." Myers claims that because he was unable to confront this phantom witness, he was denied his right "to be confronted with the witnesses against him." U.S. Const. amend. VI. However, because there was no witness here, the Confrontation Clause is not applicable. *See, e.g.*, *United States v. Irby*, 558 F.3d 651, 655 (7th Cir. 2009) (stating that the Confrontation Clause is implicated by testimonial hearsay). Myers's Confrontation Clause argument is thus subsumed into his prosecutorial misconduct argument.

them. Hence, Myers asserts that we should remand to the district court so that it may exercise its ability to depart from the career offender guidelines. Because Myers did not raise this precise argument in the district court, we review this claim for plain error.

The problem with Myers's argument is that the district court did depart from the career offender guidelines. Rather than imposing a sentence within the range of 210 to 262 months, the district court instead imposed a sentence of 180 months, based on the length of time since Myers's previous convictions. The district court thus clearly considered the guidelines range to be advisory. Because the district court considered the guidelines to be advisory, took into account Myers's apparent change in behavior and job history, and imposed a sentence below the guidelines range, no plain error occurred and a remand for resentencing is unnecessary.

Myers's final argument is that his acquitted conduct should not have been considered at sentencing. However, we have stated that district courts may consider such conduct if it has been proven by a preponderance of the evidence. *See, e.g.*, *United States v. Price*, 418 F.3d 771, 788 (7th Cir. 2005). Accordingly, we reject this final argument.

III.

Even if we assume that the government made improper statements during its closing rebuttal argument, Myers was not prejudiced by these statements. Accordingly, he has failed to show a violation of his right to a fair trial. More-

over, because it was not testimonial hearsay, the improper argument did not constitute a Confrontation Clause violation. The district court clearly considered the guidelines to be advisory; hence, a remand for resentencing is unnecessary. Finally, the district court's consideration during sentencing of Myers's acquitted conduct was proper because it found those actions had been proven by a preponderance of the evidence. For these reasons, the judgment of the district court is AFFIRMED.