# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-3479

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RONFREDRICK F. BOLING,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:08-CR-30004-001—**Michael J. Reagan**, *Judge.*

ARGUED NOVEMBER 2, 2010—DECIDED MAY 24, 2011

Before CUDAHY, FLAUM, and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge.* Defendant Ronfredrick F. Boling was convicted in federal court of one count of possession with the intent to distribute less than 5 grams of a mixture or substance containing cocaine base and two counts of distributing less than 5 grams of a mixture or substance containing cocaine base. The court issued Boling an above-guidelines sentence of 180 months in prison. Boling appeals his conviction, arguing that

various errors warrant reversal. Alternatively, Boling seeks a limited remand for resentencing, arguing that the district court committed procedural errors. We affirm Boling's conviction and sentence.

## I. BACKGROUND

At around 3:00 a.m. on October 3, 2007, Detective Kevin Jackson of the Mount Vernon, Illinois, Police Department ("MVPD") responded to a report of a burglarized apartment. On his way, Detective Jackson passed Boling and noticed that Boling smelled of burnt marijuana. When he arrived at the apartment, he noticed a footprint on the kicked-in front door. He interviewed the apartment's occupants and then left to pursue Boling.

After catching up to Boling, Detective Jackson inspected Boling's shoes, but they did not match the footprint on the apartment door. He then questioned Boling, who admitted having marijuana on his person. Based on this information, Detective Jackson searched Boling. At some point during the questioning or search, MVPD Officer Kent Jackson, Detective Jackson's twin brother, arrived and provided backup.

Detective Jackson found marijuana in Boling's pocket. He also found a digital scale in another pocket and sixteen individually packaged rocks of crack cocaine, weighing 2.6 grams total, in the crotch of Boling's pants. Police later learned Boling had been convicted in 2005 for possession with intent to distribute cocaine base under similar circumstances—Boling's possession of

sixteen individually packaged rocks of crack cocaine, weighing 2.2 grams total.

Boling was arrested and taken into custody. Later that day, Captain Ron Almaroad interviewed Boling. Almaroad was in charge of the drug task force in Mount Vernon, and he was known by local drug users and dealers for recruiting confidential informants. By his own account, Almaroad made no threats or promises to induce Boling to work as an informant. During the interview, Boling admitted to possessing sixteen packets of crack cocaine, but he claimed they were for personal use. Boling was released on bond on October 11.

On October 18, Jeff McCurdy, acting as an informant for Captain Almaroad, bought $50 worth of crack cocaine from Boling. Captain Almaroad searched McCurdy before and after the transaction, and McCurdy wore an audio and video recording device to record the transaction. The recording showed a rapid exchange of objects between McCurdy and Boling. After this exchange, McCurdy met Captain Almaroad at a pre-arranged location, where he delivered the crack cocaine he had purchased to Captain Almaroad. On November 5, McCurdy executed another controlled purchase of crack cocaine from Boling. The exchange again was quick, but the video of this transaction showed Boling reaching into his mouth—where dealers and users in Mt. Vernon commonly hide crack cocaine—just before making the exchange with McCurdy. Again, McCurdy delivered the crack cocaine he had obtained to Captain Almaroad.

Boling represented himself at trial. The theory of his defense was that members of the MVPD—including

Captain Almaroad, Officer Jackson, and Detective Jackson—had conspired to falsify evidence against him to justify federal prosecution, which Captain Almaroad could use to leverage him into working as a confidential informant. Part of Boling's trial strategy, then, was to undermine the credibility of Captain Almaroad, Officer Jackson, and Detective Jackson.

While cross-examining Officer Jackson, Boling asked for proof that Detective Jackson was his identical twin. The government suggested allowing Detective Jackson into the courtroom. Though Detective Jackson had already testified, the district judge called him into the courtroom, told him to stand in front of the jury, and then dismissed him.

While cross-examining Captain Almaroad, Boling repeatedly questioned Captain Almaroad's motives for pursuing federal prosecution. He also asked about the factors Captain Almaroad normally considers before recommending a case for federal prosecution, his relationship with federal prosecutors, and any threats or promises he had made to Boling about the possibility of federal prosecution. In response to one such question, Captain Almaroad explained that he based his decision to pursue federal prosecution on Boling's career offender status.

On re-direct examination, the government asked Captain Almaroad to explain the term "career offender status." He explained that someone who has been convicted of at least three serious drug offenses is a career offender. The government then introduced a printout

from the Illinois Department of Corrections website listing Boling's prior Illinois convictions ("IDOC print-out"). Captain Almaroad testified that he had viewed this website before interviewing Boling, that he had seen Boling had five felony drug convictions, and that he therefore had known Boling was a candidate for federal prosecution. The district court admitted the testimony and the IDOC printout—over objections of hearsay and relevance—as evidence of Captain Almaroad's reasons for pursuing federal prosecution.

Unbeknownst to the government, the district court, and even Boling's standby counsel, Boling was not a potential career offender. The IDOC printout showed Boling had two prior convictions that qualify as controlled substance offenses, as defined by United States Sentencing Guidelines § 4B1.2(b). But one of the two convictions was inaccurately listed as an offense that qualifies as a controlled substance offense. Actually, Boling had been convicted of a possession offense that does not qualify as a controlled substance offense.

After Captain Almaroad, Boling testified in narrative form. He acknowledged his past offenses, including the drug offenses listed in the IDOC printout, a conviction for deceptive practice, and others. He then testified that Captain Almaroad had manufactured evidence against him in order to leverage him into working as an informant. He admitted to having possessed marijuana and a digital scale when he was searched on October 3, but he denied possessing any crack cocaine. He testified that Captain Almaroad and the MVPD had

fabricated evidence of crack cocaine possession in order to bolster the threat of federal prosecution.

Boling also denied selling crack cocaine to McCurdy on October 18 or November 5. He provided implausible explanations of the video evidence. The video recording from October 18 showed Boling with his arms crossed during most of the encounter, but briefly showed one extended arm, which then retreated into a folded-arms position. McCurdy testified that Boling's arm extended to transfer crack cocaine to him. Boling denied ever moving his arms from a crossed position.

The video recording from November 5 showed Boling reach into his mouth, then McCurdy reach into Boling's hand, transferring money for a small white object. McCurdy testified that Boling had been hiding the crack cocaine in his mouth, that he then took it out of his mouth, and that he exchanged it for McCurdy's money. Boling denied having stored crack cocaine in his mouth; he testified that he has a nervous twitch of touching his tooth. Boling also denied exchanging crack cocaine for cash; he testified that he had given McCurdy nothing, but that McCurdy had held two rocks of crack cocaine, and McCurdy had allowed Boling to take one.

On cross-examination, the government questioned Boling about his various past offenses. The court noted Boling's responses should be considered only for impeachment. On October 2, 2009, a federal jury found Boling guilty of one count of possession with intent to distribute less than 5 grams of a mixture or substance containing cocaine base and two counts of distributing

less than 5 grams of a mixture or substance containing cocaine base. The district court sentenced Boling to 180 months' imprisonment, an upward departure from the guidelines-recommended range. The district court calculated the guidelines range of 84 to 107 months by applying a two-point offense level enhancement for obstructing justice. It then departed upward from the guidelines, explaining that Boling's multiple lies, criminal history, and refusal to accept responsibility required a lengthy sentence. Boling timely appealed his conviction and sentence.

## II. ANALYSIS

On appeal, Boling argues that several errors, individually and combined, deprived him of a fair trial. He identifies these errors as: (1) the court's admission of evidence of Boling's 2005 conviction under Federal Rule of Evidence 404(b), (2) the court's admission of the IDOC printout and Captain Almaroad's testimony about Boling's career offender status and prior criminal history, (3) the government's argument, in closing, that Boling's career offender status should be considered as evidence of his credibility, and (4) the court's demonstration of bias against Boling by directing Detective Jackson to enter the courtroom in response to Boling's asking Officer Jackson for proof of whether he and Detective Jackson were identical twins. Alternatively, Boling argues the district court abused its discretion by issuing an above-guidelines sentence of 180 months' imprisonment. We consider each of the purported trial errors before considering Boling's sentence.

*A.  Boling's 2005 Conviction*

Boling argues the district court erred by admitting evidence of Boling's 2005 conviction for possession with intent to distribute crack cocaine. We review the district court's ruling for abuse of discretion. *United States v. Gorman*, 613 F.3d 711, 717 (7th Cir. 2010).

The government could not properly introduce evidence of Boling's prior offense to show his propensity to commit drug crimes, but it could properly introduce the evidence to show his intent to commit the charged crime. Fed. R. Evid. 404(b). Evidence of a prior offense is admissible when:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Long*, 86 F.3d 81, 83 (7th Cir. 1996). Boling argues the evidence of his 2005 conviction does not satisfy the first, second, or fourth prong of this test.

According to Boling, his 2005 conviction was not admissible for any of the "other purposes" anticipated by Rule 404(b). The district court found Boling's 2005 conviction was admissible to show Boling's intent to distribute the cocaine base found on his person during

the October 3, 2007, search. Boling argues his 2005 conviction could not be properly admitted to show intent because he denied possessing crack cocaine, not the intent to distribute it.

As Boling's argument suggests, "[t]he most obvious justifiable situation in which prior convictions are admissible in drug prosecutions on the issue of intent are in those situations in which the defendant, while admitting possession of the substance, denies the intent to distribute it." *United States v. Jones*, 455 F.3d 800, 808 (7th Cir. 2006). While Boling did not concede possession at trial, Captain Almaroad testified that, during their October 3 interview, Boling had admitted to possessing crack cocaine but had denied intending to sell it. Moreover, Boling maintained throughout trial that he had used—but had not sold—drugs. So even though Boling denied possession at trial, the district court did not abuse its discretion by admitting evidence of his 2005 conviction to show his intent to distribute the crack cocaine found on him during the October 3 search. *See United States v. Conner*, 583 F.3d 1011, 1022 (7th Cir. 2009) (finding admission of Rule 404(b) evidence appropriate where defendant did "not contest the elements of knowledge and intent, but instead maintain[ed] that he did not commit the crime at all").

Next, Boling argues his 2005 conviction was not sufficiently similar to the charged offense to be relevant. He claims that the only shared characteristic of his 2005 conviction and the charged offense is that they both involve narcotics. This claim is ridiculous. In fact, both offenses involved Boling's possession of sixteen

individually packaged rocks of crack cocaine, weighing between 2 and 3 grams. The incidents took place less than three years apart. The second prong is satisfied.

Finally, Boling argues the unfair prejudice of admitting his 2005 conviction outweighs any probative value of the evidence. But Boling does not identify any prejudice from the conviction; rather, he merely restates his argument that his 2005 conviction was only weakly similar to the charged offense. Because Boling identifies no unfair prejudice, and because his 2005 conviction is sufficiently similar to the charged offense to be relevant, we cannot say the district court abused its discretion by admitting the evidence.

### B.  IDOC Printout and Career Offender Testimony

Boling claims the district court erred by admitting evidence of the IDOC printout and by permitting Captain Almaroad to testify about both the definition of the term "career offender" and Boling's criminal history. In addition, he argues that he was denied due process because he was convicted based upon this evidence, which was later shown to be inaccurate.

### 1.  Admissibility

At trial, Boling objected—on the grounds of relevance and hearsay—to the admissions of the IDOC printout and Captain Almaroad's testimony about the definition of "career offender" and Boling's criminal history. On appeal, he argues only relevance.

Boling's defense relied on showing that Captain Almaroad wanted to threaten him with federal prosecution so he would work as an informant. In response to cross-examination from Boling, Captain Almaroad explained that he had pursued federal prosecution because Boling would, if convicted, be eligible for a career offender sentence enhancement. Any evidence of Boling's career offender status was relevant because such evidence substantiated Captain Almaroad's explanation. *See* Fed. R. Evid. 401.

But not all of the IDOC printout or Captain Almaroad's testimony related to Boling's career offender status. The IDOC printout listed two convictions for possession of a controlled substance, neither of which affects the career offender enhancement. *See* U.S.S.G. § 4B1.2(b). Similarly, Captain Almaroad testified that Boling had five prior felony drug convictions, but not all felony drug convictions influence the career offender enhancement, so this testimony also went beyond explaining Boling's eligibility for the enhancement. *See id.* The district court therefore may have erred by admitting parts of the IDOC printout and Captain Almaroad's testimony about Boling's five felonies.[1]

---

[1] While parts of Captain Almaroad's testimony and parts of the IDOC printout did not relate to Boling's career offender status, they may still have been relevant to Captain Almaroad's decision to pursue federal prosecution. Because any error in admitting this evidence was harmless, we need not decide whether the admissions were erroneous.

Despite these potential errors, we will not reverse if we are convinced the jury would have convicted Boling absent the potentially erroneous admissions. *Conner*, 583 F.3d at 1025. In this analysis, we consider the overall strength of the government's remaining evidence against Boling. *See United States v. Savage*, 505 F.3d 754, 762 (7th Cir. 2007).

The government argues any error was harmless because Boling later testified in detail about his criminal history. It cites no authority in support of this argument, and we find none. *Cf. United States v. Johnson*, 617 F.3d 286, 299 n.7 (4th Cir. 2010) (concluding erroneous admission of testimony was not rendered harmless by defendant's testimony on the same subject because "the error occurred prior to [the defendant] taking the stand, making it impossible to make a post-hoc assessment as to whether [he] would have testified without the damaging, inculpatory testimony"). We therefore reject the argument that the admissions of Captain Almaroad's testimony and the full IDOC printout, if erroneous, would have been rendered harmless by dint of Boling's later testimony.

Nevertheless, we will not reverse because the remaining evidence of Boling's guilt is overwhelming. *United States v. Dennis*, 497 F.3d 765, 769-70 (7th Cir. 2007). The October 3 search of Boling's person yielded sixteen individually packaged rocks of crack cocaine and a digital scale. Captain Almaroad testified that Boling had admitted possessing the crack cocaine. Boling has a prior conviction—based on very similar facts—for pos-

session with intent to distribute crack cocaine, which was properly admitted to show his intent in this case. There is video and audio evidence of each controlled purchase of crack cocaine from Boling. McCurdy left each time with $50 and returned each time with crack cocaine. In response, Boling offers only accusations of conspiracy and implausible explanations of the video evidence.

Even without this overwhelming evidence, the alleged error would be harmless. The district court properly admitted—with an appropriate limiting instruction—evidence of the crimes that had led Captain Almaroad to believe Boling was eligible for a career offender sentencing enhancement. Any prejudice from the erroneous admission of evidence of two additional (lesser) offenses was negligible.

### 2. *Veracity*

Boling argues he was denied a fair trial because he was convicted based on evidence—that of his status as a potential career offender—that was discovered after trial to be inaccurate. But before he can make this argument on appeal, he must have made it to the district court. *See* Fed. R. Crim. P. 33; *United States v. Ogle*, 425 F.3d 471, 476 (7th Cir. 2005) (refusing to consider claim, unsupported by newly discovered evidence, that government introduced false testimony because it was not included in a timely motion for a new trial); *United States v. Higham*, 98 F.3d 285, 293 (7th Cir. 1996) (concluding that the question of whether newly discovered evidence entitled

defendant to a new trial "is one addressed to the district court's discretion, in the first instance"). Boling did move for a new trial, but his motion did not refer to any false testimony or evidence. We decline to consider his argument for the first time on appeal.

## C. Closing Argument

Boling asserts the government improperly argued in closing that Boling's career offender status was relevant to his credibility. We review this as a claim of prosecutorial misconduct. *United States v. Myers*, 569 F.3d 794, 798 (7th Cir. 2009). Because Boling did not object at trial, we review only for plain error. *Id.* Boling must show that the district court's response to the government's statement was a clear or obvious error that affected Boling's substantial rights and seriously affected the fairness, integrity, or public reputation of the proceedings. *Id.* He must also show that the outcome of the trial probably would have been different if not for the prosecutor's statement. *United States v. Hills*, 618 F.3d 619, 640 (7th Cir. 2010).

The government's statements about Boling's career offender status did not give rise to plain error. We note that the statements were part of a broader discussion of Boling's past offenses—including the offenses that purportedly made Boling a career offender—and their relation to his credibility. The government had questioned Boling about each of these prior offenses during cross-examination in order to challenge his credibility. Boling does not claim these offenses were improperly

admitted, nor does he contest the government's use of these statements during closing argument. He argues only that the government's utterance of the words "career offender" deprived him of a fair trial. We disagree. The allowance of the words "career offender" during closing argument was not a plain or obvious error. As used by the government, the term "career offender" was little more than a restatement of the offenses that the government had already mentioned in closing argument. Nor did the allowance of the words "career offender" affect Boling's substantial rights or the fairness, integrity, or public reputation of the proceedings. Accordingly, we reject his argument for reversal.

### D. *Demonstration of Bias*

Boling argues that the district court demonstrated bias against him by directing Detective Jackson to the front of the courtroom during Boling's cross-examination of Officer Jackson and that Boling was therefore denied a fair trial. We will not reverse for judicial bias unless Boling can show (1) that the district court judge demonstrated actual bias regarding Boling's honesty or guilt and (2) that Boling suffered serious prejudice as a result. *United States v. Barnhart*, 599 F.3d 737, 742 (7th Cir. 2010). Because Boling did not timely object to the judge's actions, we again review only for plain error. *Id*. at 743.

Boling has not shown that the district judge's actions constituted an obvious or clear error. A trial judge has discretion to control the mode and order of witness

interrogation and evidence presentation. Fed. R. Evid. 611(a). The judge shall exercise this discretion in order to "avoid needless consumption of time." *Id.* Here, the district judge instructed Detective Jackson to walk to the front of the courtroom in response to Boling's question to Officer Jackson requesting proof that he and Detective Jackson were identical twins. The district judge likely took this action to avoid unnecessary testimony and evidence from both parties. The district judge's actions conveyed no bias regarding Boling's honesty or guilt. At worst, his actions demonstrated doubts about the relevance of Boling's question. His actions were far from plainly erroneous.

### E.  Cumulative Error

Boling argues that, even if the errors he alleges were individually harmless, together they constitute reversible error. *See United States v. Isaacs*, 593 F.3d 517, 528-29 (7th Cir. 2010). Of the litany of errors Boling alleges, he has shown at most one: the admission of those parts of the IDOC printout and Captain Almaroad's testimony without bearing on his career offender status. Therefore, the cumulative error doctrine does not apply. *Conner*, 583 F.3d at 1027.

### F.  Sentencing

Finally, Boling argues that the district court abused its discretion by sentencing him to an above-guidelines sentence of 180 months' imprisonment. We review the

reasonableness of a sentence imposed by the district court for an abuse of discretion. *United States v. Pineda-Buenaventura*, 622 F.3d 761, 778 (7th Cir. 2010). This standard of review applies regardless of whether the sentence is inside or outside the guideline range. *Gall v. United States*, 552 U.S. 38, 49 (2007). We review *de novo* any alleged procedural error—such as failure to adequately explain a departure from the guideline recommendation or failure to consider the factors listed in 18 U.S.C. § 3553(a). *See United States v. Hall*, 608 F.3d 340, 346 (7th Cir. 2010); *United States v. Anderson*, 604 F.3d 997, 1003 (7th Cir. 2010).

Boling argues the district court did not adequately explain its upward departure from the guidelines. To the contrary, the district court thoroughly discussed its reasoning. The real thrust of Boling's argument is that the district court based the above-guidelines sentence primarily on Boling's repeated lying under oath. According to Boling, the two-level obstruction of justice enhancement prescribed by the guidelines fully accounts for any and all instances of perjury. Boling is incorrect. While the district court cannot impose multiple obstruction of justice enhancements, it can consider multiple acts of obstruction in determining a sentence that achieves the policy goals outlined in § 3553(a)(2). *United States v. Willis*, 523 F.3d 762, 769-70 (7th Cir. 2008); *see also United States v. Furkin*, 119 F.3d 1276, 1283-84 (7th Cir. 1997). Here, the district court followed our guidance in *Willis* by considering Boling's multiple acts of obstruction to determine a reasonable sentence. The district

court did mention that, were the sentencing guidelines mandatory, it would have added separate obstruction of justice enhancements for each obstructive act. We need not consider what the court said it would have done within the framework of an alternate legal system. What the court actually did was determine the correct guideline recommendation and then consider the appropriate factors in § 3553(a) to determine a reasonable sentence.

Boling also argues that the district court failed to properly consider the sentencing factors listed in § 3553(a). Yet the court adequately explained its analysis of these factors. Boling's real argument is that the court's consideration of Boling's acts of obstruction tainted the analysis. This argument is unsupported and meritless.

Boling claims his sentence was substantively unreasonable, but his argument depends—once again—on the incorrect premise that the district court could not consider additional acts of obstruction once it had imposed the obstruction of justice enhancement. Our task in reviewing a sentence is to decide whether the district judge's basis for imposing the sentence it did was "logical and consistent with the factors set forth in section 3553(a)." *United States v. Williams*, 425 F.3d 478, 481 (7th Cir. 2005). Boling has not shown that the district court's reasoning was illogical or inconsistent with the factors listed in § 3553(a), so we will not disturb Boling's sentence.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Boling's conviction and sentence.