# COURT OF APPEALS
## COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:
2019AP1753-CR
2019AP1754-CR

Complete Title of Case:

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BENJAMIN J. KLAPPS,

DEFENDANT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | December 23, 2020 |
| Submitted on Briefs: | July 16, 2020 |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Gundrum and Davis, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jefren E. Olsen*, assistant state public defender of Madison. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Daniel J. O'Brien*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

## COURT OF APPEALS
## DECISION
## DATED AND FILED

### December 23, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.   **2019AP1753-CR**
              **2019AP1754-CR**

Cir. Ct. Nos.  **2000CF255**
               **2000CF284**

STATE OF WISCONSIN

IN COURT OF APPEALS

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

BENJAMIN J. KLAPPS,

   DEFENDANT-APPELLANT.

APPEALS from an order of the circuit court for Winnebago County: SCOTT C. WOLDT, Judge. *Affirmed*.

Before Neubauer, C.J., Gundrum and Davis, JJ.

¶1     NEUBAUER, C.J. Benjamin J. Klapps appeals from an order revoking his conditional release. Klapps contends the court was objectively biased against him, as evidenced by the court's reference to a psychologist's opinion

rendered in reports filed in prior proceedings in which Klapps' conditional release was revoked. He further contends we should invoke our discretionary reversal power in the interest of justice. Because Klapps failed to seek postrevocation review, as required by WIS. STAT. § 971.17(7m) (2017-18),[1] and his claim of objective bias does not rise to the level of showing actual bias amounting to a due process violation, we reject Klapps' arguments. We affirm.

## BACKGROUND

¶2      In 2000, Klapps pled guilty to sexual assault of a child and felony bail jumping but was found not guilty by reason of mental disease or defect.[2] He was committed to the Department of Health and Family Services (Department) at Winnebago Mental Health Institute for twenty-six years and eight months.

¶3      Since his original commitment, Klapps has been conditionally released and revoked and recommitted many times. Most recently, in late February 2019, the Department filed a petition to revoke Klapps' conditional release to a group home based on several incidents in late 2018 and early 2019. The Department alleged Klapps sexually harassed, made inappropriate comments to, and ultimately threatened to harm, staff at the group home.

¶4      On March 6, 2019, the court held a revocation hearing. The only witness to testify was Klapps' case manager, Patrick Woodbridge, who testified to

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] Klapps resolved two cases with his guilty pleas, and filed two appeals, which have been consolidated on appeal.

2

the incidents in late 2018 and early 2019 while Klapps was out on conditional release at the group home.

¶5    Woodbridge detailed a series of incidents that demonstrated a "troublesome pattern" over the course of about five weeks, involving inappropriate comments that were often sexual in nature and culminating in "very threatening comments." These included telling his sex offender treatment therapist that he was having sexual fantasies about his case manager. His therapist told Klapps that having sexual fantasies with someone he worked with directly is considered a risk. Woodbridge was assigned to be his new case manager based on Klapps' self-reported inappropriate fantasies about his other case manager.

¶6    The next day, Klapps told a staff member, D.K., that he had a "hard on for 3 hours but it went away," then continually asked her why she was not doing his room checks anymore, and followed her around. He then asked D.K. if she was afraid of him and when she said, "No," he said, "Good, because if I was going to attack you, I have had plenty of chances" and "I have feelings for you as a staff resident relationship."

¶7    Although Klapps repeatedly was cautioned about his comments and behavior after these incidents, he continued. Three days later, he again approached D.K. and told her he had feelings for her and could not help the way he felt, repeating that if he were going to attack her, he would have already done so, but would not act on his feelings because he did not want to get in trouble.

¶8    Klapps subsequently told D.K. he was having suicidal thoughts, but not an "urge" to kill himself, and that it was his urges that were dangerous. He told D.K. that he was having sexual urges about her since that morning, causing her to

3

go into her office and shut her door, where she then heard Klapps pacing back and forth.

¶9 The staff determined to take Klapps into custody based on his risky behavior. When told of the allegations, he said, "I did not touch [D.K.] or do anything," complained that the staff lied, and said that if he was placed back at the same group home, he would "beat the hell out of them."

¶10 At the hearing on the petition for the termination of his conditional release, the State argued that these incidents, as well as others demonstrating that he was pushing boundaries, established a pattern of escalating risky behavior and threatening sexual comments, which posed a risk to himself and the community, especially staff members.

¶11 Klapps argued that there was no physical contact or specific threats of harm, and he specifically told staff he was not going to act on his thoughts. He argued that because he only saw his therapist every other week, and not for a stretch of three weeks at that time, he had to disclose these thoughts to the staff. He contended that these statements had to be assessed in the context of his therapist's unavailability and the treatment expectation that he disclose his fantasies to reduce the risk he would simply internalize and act on the thoughts.

¶12 The trial court found revocation of Klapps' conditional release was supported by clear and convincing evidence. The court explained that its ruling was based on "the only evidence before [the] court"—namely, Woodbridge's testimony. The court found that revocation was appropriate because the evidence was that Klapps kept making threats despite being "told numerous times not only to stop talking about his sexual conquests but [also] his urges with staff people and he

4

continues to do it." In his oral ruling, the trial judge also noted that he recalled the conclusions of a psychologist, Dr. Allen Hauer, who had assessed whether Klapps could be safely released to the community and, if so, under what conditions, in reports submitted in prior proceedings from 2015 to 2018. Hauer did not examine or issue a report in the 2019 proceeding. The judge recalled Hauer's conclusion that Klapps' personality disorder as a sexual predator could not be treated with drugs, and he was unlikely to change. No objection was made to the court's discussion of this recollection.

¶13 The court found Klapps' statement that he would "beat the hell out of people" if he went back to the group home, along with his repeated, persistent, inappropriate statements and behavior despite being advised to stop, demonstrated that Klapps posed "a substantial risk of bodily harm to others."

¶14 Klapps filed a notice of intent to seek postdisposition relief in the trial court. He did not file a motion for postdisposition relief before filing this direct appeal. Additional facts will be discussed where relevant.

## DISCUSSION

*Standard of Review*

¶15 The State contends that Klapps' failure to move for postdisposition relief in the trial court forfeits his appellate challenge. To determine whether a motion for postdisposition relief is required we must interpret WIS. STAT. § 971.17(7m). Statutory interpretation presents an issue of law we review de novo. ***State v. Grady***, 2007 WI 81, ¶14, 302 Wis. 2d 80, 734 N.W.2d 364. We review whether a defendant adequately preserved or forfeited his right to appellate review

of a particular claim de novo. *State v. Coffee*, 2020 WI 1, ¶17, 389 Wis. 2d 627, 937 N.W.2d 579.

*A Motion for Postdisposition Relief is Required by* WIS. STAT. § 971.17(7m) *for New Issues*

¶16 Klapps contends that the trial court evidenced objective bias (the appearance of bias) against him by referencing the earlier conclusions of Hauer discussing his mental health and performance on conditional release, denying him due process. He contends that the trial judge's comments indicate that the judge had already decided his case before taking evidence. Klapps acknowledges that he did not object at the time of the hearing such that he forfeited any challenge based on his inability to confront Hauer or the court's reliance on a prior report. He has not challenged his counsel's failure to object with an ineffective assistance of counsel claim; rather, he claims that the error is one that need not be preserved due to its nature as "structural error."

¶17 The State responds to the bias claim by noting that Klapps' failure to file a postdisposition motion in the trial court to raise his judicial bias claim forfeits his appellate challenge under the controlling statutes governing a party's appellate rights.

¶18 WISCONSIN STAT. § 971.17(7m) provides:

(7m) MOTION FOR POSTDISPOSITION RELIEF AND APPEAL.

(a) A motion for postdisposition relief from a final order or judgment by a person subject to this section shall be made in the time and manner provided in [WIS. STAT. §§] 809.30 to 809.32. An appeal by a person subject to this section from a final order or judgment under this section or from an order denying a motion for postdisposition relief shall be taken in the time and manner provided in [WIS. STAT. §§] 808.04(3) and 809.30 to 809.32. *The person shall file a motion for*

> *postdisposition relief in the circuit court before a notice of appeal is filed unless the grounds for seeking relief are sufficiency of the evidence or issues previously raised.*

(Emphasis added.)

¶19 When interpreting WIS. STAT. § 971.17(7m), the goal is to give effect to the intent of the legislature, which we assume is expressed in the text of the statute. ***State ex rel. Kalal v. Circuit Court for Dane Cnty.***, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. To this end, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially-defined words are given their technical or special definitions. ***Id.***, ¶45. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. ***Id.***, ¶48. Thus, we interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes;" and we interpret it reasonably to avoid absurd or unreasonable results. ***Id.***, ¶46. If the meaning of the statute is plain, then we apply that language to the facts at hand. *See **id.***, ¶¶45-50.

¶20 Employing these principles, we conclude that the plain meaning of WIS. STAT. § 971.17(7m) requires a postdisposition motion when an issue has not been previously raised. The use of "shall" requiring the petitioner "to file a motion for postdisposition relief in the circuit court" if the issue was not previously raised is unambiguous. Klapps does not argue otherwise.

¶21 The same provision also directs that postdisposition motions "shall" be made in the time and manner provided in WIS. STAT. RULE 809.30. In turn, RULE 809.30(2)(h) reiterates the *same requirement*, providing: "The person shall file a motion for postconviction or postdisposition relief before a notice of appeal is

7

filed unless the grounds for seeking relief are sufficiency of the evidence or issues previously raised."

¶22  Notably, WIS. STAT. § 971.17(7m), the statute dealing with postdisposition motions, was created by 2009 Wis. Act 26. It not only incorporates and reiterates the above-discussed requirement of WIS. STAT. RULE 809.30(2)(h), it mirrors WIS. STAT. § 974.02, which deals with the closely related issue of post*conviction* motions challenging judgments of conviction prior to appeal. Like § 971.17(7m) does for postdisposition motions, § 974.02(1) also requires motions for postconviction relief to be made in the time and manner provided in RULE 809.30, with § 974.02(2) providing: "An appellant is not required to file a postconviction motion in the trial court prior to an appeal if the grounds are sufficiency of the evidence or issues previously raised."

¶23  Our supreme court has made clear that WIS. STAT. § 974.02 requires that, for new issues on appeal to be considered *as a matter of right*, they must be raised in a postconviction motion. *State v. Monje*, 109 Wis. 2d 138, 325 N.W.2d 695, 327 N.W.2d 641 (1982) (on reconsideration);[3] *see also **State ex rel. Rothering v. McCaughtry***, 205 Wis. 2d 675, 678 n.3, 556 N.W.2d 136 (Ct. App. 1996); *Coffee*, 389 Wis. 2d 627, ¶¶31, 41 ("[W]hile an objection may be the best practice, a postconviction motion is also a timely manner in which to assert that claim ….").

¶24  We see no basis to interpret the circumstances under which a post*disposition* motion is required to be any different than that of a post*conviction*

---

[3] While *State v. Monje*, 109 Wis. 2d 138, 325 N.W.2d 695, 327 N.W.2d 641 (1982) (on reconsideration), only acknowledged an exception for sufficiency of the evidence, the legislature has since amended WIS. STAT. § 974.02(2) to also allow the direct appeal of "issues previously raised" in the trial court. *Id.*

8

motion. The procedural statutes governing this issue employ identical language and equally mandate the raising of new issues prior to appeal, whether it be in a postdisposition or postconviction context. Klapps provides no argument, much less legal authority, to the contrary.

¶25 Likewise, the rationale for the rule in postconviction proceedings is equally applicable to postdisposition proceedings after the revocation of supervised release. This is not a mere rule of convenience: it is essential to the orderly administration of justice, as it promotes efficiency and justice by giving the parties and the trial judge notice, allowing the trial court to correct or avoid the alleged error, encouraging the attorneys to prepare diligently, and avoids sandbagging by failing to object and later claiming error, all to the end of eliminating the need for appeal. *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727.

¶26 In sum, WIS. STAT. § 971.17(7m) makes clear that in pursuing postdisposition relief after the revocation of supervised release, a petitioner may file a direct appeal to address sufficiency of the evidence or issues that have already been raised and a postdisposition relief motion to address those issues that have not been raised, including claims of judicial bias.[4]

¶27 It is undisputed that Klapps' judicial bias challenge was not "previously raised." Had Klapps filed a postdisposition motion, the trial court could

---

[4] While Klapps suggests a postdisposition motion would be fruitless before a biased judge, he fails to identify any authority to support this contention, and our review indicates this procedure is routinely employed. *See State v. Herrmann*, 2015 WI 84, ¶21, 364 Wis. 2d 336, 867 N.W.2d 772 (defendant filed postconviction motion alleging prejudging and seeking resentencing); *State v. Marcotte*, 2020 WI App 28, ¶¶1, 17, 392 Wis. 2d 183, 943 N.W.2d 911 (postconviction motion filed challenging court's alleged objective bias in prejudging sentence); *State v. Goodson*, 2009 WI App 107, ¶6, 320 Wis. 2d 166, 771 N.W.2d 385 ("Goodson filed a motion for postconviction relief, arguing that he had been deprived of the right to an impartial judge because the court prejudged the reconfinement sentence.").

have directly addressed the claim. Klapps deprived the trial court of that opportunity before appealing directly to this court, raising the issue for the first time.

*Our Review of Forfeited Objections Is Under Our Discretionary Reversal Authority*

¶28 Klapps contends that, despite his failure to file a postdisposition motion in the trial court, his claim of objective judicial bias is a structural constitutional violation that cannot be forfeited, and which requires a new hearing. We disagree as, absent a challenge based on ineffective assistance of counsel, our review is limited to our discretionary reversal authority under WIS. STAT. § 752.35. Accordingly, we first review case law addressing forfeiture, and then explain our denial of Klapps' claim seeking discretionary reversal.

¶29 First, the State aptly points out that our supreme court has made clear that failure to object, even to a claimed structural constitutional violation, forfeits the challenge. *State v. Pinno*, 2014 WI 74, ¶¶55-63, 356 Wis. 2d 106, 850 N.W.2d 207 (claimed denial of the structural public trial right at voir dire was forfeited by failure to timely object). Review is available under an ineffective assistance of counsel framework, in which the defendant has the burden of proof to show both deficient performance and prejudice. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Coffee*, 389 Wis. 2d 627, ¶22; *Pinno*, 356 Wis. 2d 106, ¶¶81-86.[5]

¶30 Likewise, the United States Supreme Court has affirmed that, even as it applies to alleged structural errors, absent an objection at trial and on appeal, the issue is to be reviewed under an ineffective assistance of counsel framework.

---

[5] We note that newly discovered evidence supports a claim for further review. For example, *State v. Gudgeon*, 2006 WI App 143, 295 Wis. 2d 189, 720 N.W.2d 114, involved a collateral attack on the court's impartiality with a claim that new evidence showed that the court had prejudged the defendant's sentence. Klapps does not argue that there is newly discovered evidence here.

*Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910-13 (2017) ("[T]he burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or ... to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair."); s*ee also **United States v. Williams***, 974 F.3d 320, 344 (3d Cir. 2020) (applying *Weaver* and explaining that "[t]he unique considerations raised by appeal on an unpreserved error should not be disregarded simply because of the nature of the error"); ***Ahmed v. Madden***, No. 3:18-CV-2309-H-JLB, 2019 WL 4254500, at *7 (S.D. Cal. Sept. 9, 2019) (applying *Weaver* to ineffective assistance of counsel claims for, among other things, trial counsel's failure to seek recusal of "biased" judge and explaining that the judge's challenged rulings "do not suggest judicial bias" and "[b]ecause Petitioner does not demonstrate prejudice, these claims to ineffective assistance of counsel are without merit").

¶31     We may also invoke our power of discretionary reversal under WIS. STAT. § 752.35. *See **State v. Beasley***, 2004 WI App 42, ¶17 n.4, 271 Wis. 2d 469, 678 N.W.2d 600 (we may address forfeited errors under our discretionary reversal authority set out at § 752.35). Section 752.35 permits us to reverse despite a party's forfeiture where "the real controversy has not been fully tried" or where "it is probable that justice has for any reason miscarried." We exercise our discretionary

11

reversal power under § 752.35 "sparingly and only in the most exceptional cases." *State v. Schutte*, 2006 WI App 135, ¶62, 295 Wis. 2d 256, 720 N.W.2d 469.[6]

¶32     While Klapps contends that a claim of objective judicial bias should be treated differently than the failure to object to the public trial violations at issue in *Pinno* and *Weaver*, he does not identify any cases in which such a claim was exempt from the requirement that a forfeited claim must be brought before this court within the context of an ineffective assistance of counsel or interest of justice framework.  Most importantly, he points to no authority expressly providing the court of appeals, as compared with the Wisconsin Supreme Court, with the authority to overlook an unobjected to error outside of these established frameworks.  As

---

[6] The federal avenue to challenge an unobjected error is plain error, even in the context of a judicial bias claim.  Plain error review requires a four-part showing:  (1) that an error occurred; (2) which was clear or obvious; (3) which not only affected defendant's substantial rights; (4) but also seriously impaired the fairness, integrity, or public reputation of judicial proceedings. *United States v. Barnhart*, 599 F.3d 737, 743 (7th Cir. 2010); *see* Fed. R. Crim. P. 52(b); *see also United States v. Boling*, 648 F.3d 474, 482 (7th Cir. 2011) (Court will only reverse for judicial bias when it was not raised in the trial court if defendant "can show (1) that the district court judge demonstrated actual bias regarding [defendant's] honesty or guilt and (2) that [defendant] suffered serious prejudice as a result.  Because [defendant] did not timely object to the judge's actions, we again review only for plain error.").

such, we conclude, our review is limited to one under our power of discretionary reversal.[7]

*We Decline to Exercise Our Power of Discretionary Reversal*

¶33     Regardless of forfeiture, Klapps asks that we exercise our power of discretionary reversal, arguing that he is entitled to a new revocation proceeding before an unbiased judge in the interest of justice. Klapps' specific challenge is to the consideration of the psychologist's conclusions which, he argues, is evidence that the trial court had already decided the case. Klapps asserts that the real focus of the controversy should have been on whether he was dangerous at the time of the revocation hearing as evidenced by his behavior while at the group home, but the

---

[7] Klapps points to *State v. Carprue*, 2004 WI 111, ¶¶57-59, 274 Wis. 2d 656, 683 N.W.2d 31, in support of his argument that his claim of judicial bias cannot be forfeited. *Carprue* addressed both a claim of a statutory violation and a claim of due process violation based on judicial bias arising from the trial judge's calling and questioning of witnesses. *Id.*, ¶¶29, 31, 58. Our supreme court found that the issues presented by the trial court's actions "could be addressed under any of three legal theories"—a statutory violation, ineffective assistance of counsel, or a violation of "Carprue's due process rights to a fair trial before an impartial judge." *Id.*, ¶29. The supreme court held that Carprue's statutory violation claim had been forfeited, *id.*, ¶35, and rejected his ineffective assistance of counsel claim on the merits, but then went on to also address the due process claim on the merits even though Carprue had not preserved it with a contemporaneous objection, *id.*, ¶58. The court concluded that the due process claim failed, not because it was forfeited, but because Carprue "present[ed] no basis" for finding bias and did "no more than allege that [the judge] harbored general bias in favor of the State in criminal prosecutions." *Id.*, ¶60.

While we question the basis for the court's unexplained conclusion that the alleged structural error "could not be waived," *id.*, ¶57, we see no indication, and Klapps has provided none, that the decision permits this court to analyze Klapps' claim outside of our statutory discretionary reversal authority, *see Vollmer v. Luety*, 156 Wis. 2d 1, 16-17, 456 N.W.2d 797 (1990) (the common law "integrity of the fact-finding" exception grants the supreme court the power to review waived error that is unavailable to the court of appeals; there are only two grounds for the court of appeals to reverse a judgment under WIS. STAT. § 752.35: (1) when the real controversy has not been fully tried; or (2) when it is probable that justice has for any reason miscarried and the appellate court can conclude that a new trial would probably produce a different result); *State v. Schumacher*, 144 Wis. 2d 388, 410, 424 N.W.2d 672 (1988) (the supreme court has a general power of review not available to the court of appeals).

judge's focus on Hauer's earlier statements obscured and prevented the real controversy from being fully tried.

¶34    Discretionary reversal may be warranted if the court "had before it testimony or evidence which had been improperly admitted, and this material obscured a crucial issue and prevented the real controversy from being fully tried." *See* ***State v. Schumacher***, 144 Wis. 2d 388, 400, 424 N.W.2d 672 (1988).[8] Klapps correctly notes that, when the real controversy has not been fully tried, we may exercise our power of discretionary reversal without finding the probability of a different result on retrial. *See* ***Vollmer v. Luety***, 156 Wis. 2d 1, 19, 456 N.W.2d 797 (1990). Nevertheless, Klapps' claim lacks merit because, as we discuss below, the real controversy of his present dangerousness was fully and fairly tried. Klapps' contention that the court's comments rise to the level of evidencing a great risk of actual bias amounting to denial of due process fails.

¶35    As we are reviewing a claim of judicial bias, we consider the relevant standard of review and applicable law. "Whether a judge was objectively not impartial is a question of law that we review independently." ***State v. Pirtle***, 2011 WI App 89, ¶34, 334 Wis. 2d 211, 799 N.W.2d 492; *see also* ***State v. Goodson***, 2009 WI App 107, ¶7, 320 Wis. 2d 166, 771 N.W.2d 385 ("Whether a circuit court's partiality can be questioned is a matter of law that we review independently.").

¶36    There is a presumption that a judge acted fairly, impartially, and without prejudice. ***Goodson***, 320 Wis. 2d 166, ¶8. "A defendant may rebut the

---

[8] Klapps only argues that the real controversy was not tried and does not make any miscarriage of justice argument nor does he argue that his judicial bias challenge is entitled to a plain error review. *See* WIS. STAT. § 901.03(4); ***Schumacher***, 144 Wis. 2d at 402 (concluding that the plain error doctrine has been limited to evidentiary issues).

presumption by showing that the appearance of bias reveals a great risk of actual bias." ***State v. Herrmann***, 2015 WI 84, ¶3, 364 Wis. 2d 336, 867 N.W.2d 772. "Such a showing constitutes a due process violation." ***Id.*** Where such an error occurs, it is "so intrinsically harmful as to require automatic reversal." ***Neder v. United States***, 527 U.S. 1, 7 (1999); *see* ***Williams v. Pennsylvania***, 136 S. Ct. 1899, 1909 (2016) ("[A]n unconstitutional failure to recuse constitutes structural error.").

¶37     We pause here briefly to set forth the standard governing the trial court's decision at the revocation hearing. WIS. STAT. § 971.17(3)(e) provides, in pertinent part, as follows:

> The state has the burden of proving by clear and convincing evidence that any rule or condition of release has been violated, or that the safety of the person or others requires that conditional release be revoked. If the court determines after hearing that any rule or condition of release has been violated, or that the safety of the person or others requires that conditional release be revoked, it may revoke the order for conditional release and order that the released person be placed in an appropriate institution under [WIS. STAT. §] 51.37(3) until the expiration of the commitment or until again conditionally released under this section.

Thus, at the revocation hearing, the court was charged with reviewing the evidence to determine whether Klapps had violated any of the rules of his conditional release or presented a danger to himself or others. *See* § 971.17(3)(e). Whether Klapps' behavior established that Klapps presented a danger to himself or others was the real controversy to be tried at the hearing.[9]

¶38     We conclude this is not the sort of "exceptional case[]" warranting discretionary reversal under WIS. STAT. § 752.35. *See* ***Schutte***, 295 Wis. 2d 256, ¶62. While this doctrine does not, by definition, arise unless there is a failure to

_____

[9] The court did not identify any rules Klapps violated and the State does not argue that this basis supported revocation.

15

object, we nonetheless think it significant that if the real controversy had not been tried, there was not one, but three prior opportunities to make such a case, including a potential ineffective assistance of counsel claim. Although not before us, even if Klapps had availed himself of the latter claim, his argument would fail, as there is no reasonable probability of a different outcome.

¶39 As to the substance of the trial court's comments, while Klapps forfeited a challenge to the lack of notice and opportunity to address Hauer's earlier conclusions, Klapps has provided no rebuttal to the substance of the psychologist's testimony had the State called him to set forth the conclusions recounted.[10] Most importantly, Klapps does not argue that the trial judge's recollection of the psychologist's conclusions was inaccurate.

¶40 We also fail to understand how Klapps' complaint that a fact-finding judge recalls information from a prior revocation proceeding evidences prejudgment, unless, of course, the stated recollection is objected to as inaccurate. In short, we do not see how Klapps' apparent belief that the bell should be unrung

---

[10] We agree with the State that an individual's prior revocations and the basis for the same continue to inform and are relevant to a determination of dangerousness. We cannot conceive of any grounds to distinguish what may be considered in a recommitment proceeding as opposed to that considered in the initial or release determinations. *See State v. Wood*, 2010 WI 17, ¶37, 323 Wis. 2d 321, 780 N.W.2d 63 (in making a release determination, "the court considers the same factors as it did with the initial commitment, such as the nature of the crime and that person's history of mental illness to inform its determination"). While the initial considerations "taken together, create at least an implicit finding of dangerousness, if not an express finding," and they "continue to be present until they are changed or upset," the question for revocation is whether the individual's behavior demonstrated that change continued after release. *Id.*, ¶38. A "non-exhaustive list of factors" *may* be considered by the court, but it is not required to consider them in determining dangerousness. *State v. Randall*, 2011 WI App 102, ¶16, 336 Wis. 2d 399, 802 N.W.2d 194. The factors include the nature and circumstances of the crimes, the person's mental history and present mental condition, and his or her past performance while institutionalized and conditionally released.

works as a practical matter, unless, again, the information is erroneous. Klapps does not contend it is.

¶41 Moreover, as Klapps had been committed and this proceeding was to revoke his release for the fifth time, he was undoubtedly aware of Hauer's conclusions and did not choose to have an independent psychological evaluation in the proceeding, as was his right. *See* WIS. STAT. § 971.17(7)(c).

¶42 To summarize, there is nothing to support Klapps' argument that the real controversy—whether he was dangerous at the time of the revocation hearing as evidenced by his behavior at the group home in the days before the hearing—was not tried. The entire focus of the revocation hearing was on Klapps' conduct at the group home. Klapps does not develop any argument that there was insufficient evidence to support the trial court's conclusion that he presented a substantial risk of serious bodily harm to others. Instead, he points only to the court's rejection of his argument that his comments demonstrated a "measure of improved control" given his therapist's unavailability. Klapps' disagreement with the trial judge's conclusion is nothing more than that. He fails to address the threat to "beat the hell" out of staff when learning they believed his behavior was dangerous, or how repeated sexual comments, discussion of hypothetical attacks based on sexual impulses, and following staff around, either shows improvement or is therapeutic.

¶43 Ultimately, Klapps fails to explain how the trial judge's recollection of the psychologist's conclusions from prior proceedings transforms into prejudgment as compared to simply finding that Klapps' comments and behavior at the group home were sexually predatory—not only highly inappropriate, but persistent, intimidating, and threatening. That the judge found his behavior was not treatable with drugs and was unlikely to change is all part and parcel of the facts

17

supporting a conclusion of continuing dangerousness in Klapps' fifth revocation hearing.

¶44 In short, Klapps has failed to show that the trial court's conclusion based on the facts presented evidenced prejudgment as compared to simply disagreeing with Klapps' characterization of his behavior. He also has failed to show that the issue of his dangerousness at the time of the revocation hearing was not fully or fairly tried. We see no serious prejudice to Klapps or grounds to conclude that the proceeding was unfair, lacked integrity, or amounted to a denial of due process.

¶45 For these and the above reasons we reject Klapps' judicial bias claim. We see no reason to exercise our discretionary reversal authority. We reject Klapps' request for reversal, as we cannot conclude that the real controversy was not fully tried.

*By the Court*.—Order affirmed.